IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:21-CR-802 |
| Plaintiff, | : | |
| | : | JUDGE CHRISTOPHER A. BOYKO |
| vs. | : | |
| ALEN ENI GORISHTI, | : | **DEFENDANT'S MOTION TO** |
| | : | **DISMISS COUNT ONE OF THE** |
| Defendant. | : | **INDICTMENT FOR FAILURE** |
| | : | **TO STATE AN OFFENSE** |

Alen Gorishti moves to dismiss count one in the indictment under Federal Rule of Criminal Procedure 12(b)(3)(B). Count one of the indictment must be dismissed because it lacks specificity and fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).

I. **Factual allegations and the indictment**

In November 2016, Alen Gorishti was employed by Great Lakes & International Towing & Salvage Company, a Canadian company. At that time, Gorishti was certified as a Second Mate and assigned to the Petite Forte, a tugboat operating on the Great Lakes. As the Second Mate, Gorishti shared the responsibility with the captain for "navigating the vessel, overseeing loading and unloading of cargo, supervising activities of the deck crew," etc.[1] As detailed in the discovery, Gorishti possessed all required licenses and endorsements to operate the Petite Forte and had obtained his Second Mate license on April 14, 2015. (USCG report, p. 7).

The captain of the Petite Forte had standing orders for the Mates to follow when navigating the Petite Forte. This included a requirement that the Mate on watch maintain a minimum distance of one mile from all other vessels. (USCG report, p 7). On November 6, 2016, at approximately

---

[1] *https://imagine-marine.ca/discover-mariners-career*

4:06 p.m. the Petite Forte was pushing the St. Mary's Cement, a Canadian commercial barge, past Fairport Harbor heading west to drop a load of cement in Cleveland.[2] Gorishti was on duty in the upper wheelhouse as part of a six-hour shift. The weather was clear, and the waves were approximately two feet, and the wind measured about 15 knots.

As the Petite Forte traveled west, approximately 2.5 miles north of Fairport Harbor, Gorishti observed another barge, the Joseph Thompson approaching Fairport Harbor. Using the Petite Forte's radar, Gorishti calculated the closest point of approach between the Thompson and the Petite Forte at less than one mile. Gorishti altered the auto pilot course slightly to maintain the one-mile distance as required by the standing orders. Once cleared of the Joseph Thompson, Gorishti adjusted back to the original course. The sun was setting and Gorishti was not wearing sunglasses. Gorishti was, at all times, monitoring the ship's radar. Gorishti did not see any other watercraft on the ship's radar.

At approximately 4:30 p.m., Gorishti noticed a small fishing boat – the Lund – in distress. When Gorishti first saw this fishing boat, it was approximately 300 feet in front of the Petite Forte's bow and approximately 60 feet to the port side. (USCG report, p. 9). Gorishti saw people in the water; he immediately notified the captain, who arrived in the upper wheelhouse quickly and took over the steering. Gorishti went down to get a better look at the distressed boat. The captain alerted the Coast Guard and turned the Petite Forte around to assist in the rescue.  One of the occupants of the fishing boat was recused by the Coast Guard. The second occupant was not located and was found deceased approximately two months later.

---

[2] The Petite Forte and the St. Mary's Cement barge were connected and travelling as one unit on November 6, 2016. Any reference to the Petite Forte in this motion is referring to the Petite Forte and the St. Mary's barge together as one unit.

On November 3, 2021, three days shy of five-year statute of limitations, an indictment was filed charging Gorishti with one count of seaman's manslaughter (Count One), in violation of 18 U.S.C. § 1115, and one count of making a false statement to law enforcement (Count Two), in violation of 18 U.S.C. § 1001(a)(2). Dkt. 1, Indictment. With respect to Count One, the indictment alleges that "[o]n or about November 6, 2016, in the Northern District of Ohio, Eastern Division, Defendant, Alen Eni Gorishti, second mate of the [ ] Petite Forte, though misconduct, negligence and inattention to his duties, caused the life of Victim-2 to be destroyed, in violation of Title 18, Section 1115 of the United States Code." Dkt. 1. The indictment does not allege any specific facts to suggest misconduct or inattention to duties. Nor does the indictment specifically allege how Mr. Gorishti might have acted negligently. The indictment only states the alleged result – that Gorishti "navigated the [ ] Petite Forte into the [fishing boat]," causing the fishing boat to capsize and for the two occupants to go into the water. Dkt. 1, Indictment, PageID 2.

Gorishti now moves to dismiss count one for lack of specificity and failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).

## II. The indictment must contain a statement of the essential facts constituting the offense

An Indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The indictment must provide the defendant with sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution for the same offense, and to ensure that he be prosecuted upon facts presented to the grand jury. *See Russell v. United States*, 369 U.S. 749 (1962); *Stirone v. United States*, 361 U.S. 212 (1960). Specificity of the allegations is necessary under the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]" U.S. Const. amend. VI.

While "the language of the statute may be used in the general description of the offense, . . . it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117-18 (1974) (internal quotation marks and citation omitted). *See also United States v. Cruikshank*, 92 U.S. 542, 558 (1875). ("It is an elementary principle of criminal pleading, that, where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species – it must descend to particulars."). A defendant may move to dismiss an indictment that "lack[s] . . . specificity." Fed. R. Crim. P. 12(b)(3)(B)(iii).

The indictment alleges Alen Gorishti caused the death of Victim 2 through his "misconduct, negligence and inattention to his duties." Dkt. 1, Indictment, PageID 2. The indictment, however, fails to allege any supporting facts. The indictment does allege Gorishti "navigated the [ ] Petite Forte into the [fishing boat]," causing the fishing boat to capsize and for the two occupants to go into the water. Dkt. 1, Indictment, PageID 2. Assuming the Petite Forte collided with the fishing boat, there are no allegations in the indictment to support that this collision was the result of some misconduct, negligent, or inattention by Gorishti. Without some detail in the indictment of how Mr. Gorishti was engaged in misconduct, or how he was negligent, or what specific duties he is alleged to have been inattentive to, Gorishti is unable to prepare a defense.

The indictment fails to put Gorishti on notice as to why the government is alleging Gorishti is at fault for the collision. The government merely alleges a collision occurred. Without some specific allegation of misconduct or negligence by Gorishti, or some specific allegation that Gorishti was inattentive to a particular duty, he is left guessing on how to defend the case. *See*

*Hamling v. United States*, 418 U.S. at 117-18. The lack of specificity of the allegations in the indictment is a violation of Fed. R. Crim. P. 7(c)(1) and Gorishti's Sixth Amendment. This Court should dismiss count one of the indictment for lack of specificity.

### III. Count one of the indictment also fails to state an offense

Under the Fifth and Sixth Amendments, an indictment must "contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend." *Hamling*, 418 U.S. at 117. An indictment is sufficient only if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and [ ] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Id.*; *see also United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (quoting *United States v. Douglas,* 398 F.3d 407, 411 (6th Cir. 2005) (holding an indictment is sufficient if it "fully, directly, and expressly . . . set[s] forth all the elements necessary to constitute the offense intended to be punished")). This constitutional requirement is incorporated into Federal Rule of Criminal Procedure 7(c)(1), which requires an indictment to include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." If the indictment fails to allege all of the essential elements of an offense, the defendant may move to dismiss for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v); *see also United States v. Howard*, 947 F.3d 936, 942 (6th Cir. 2020).

"The fact that the statute does not specify any required mental state, . . . does not mean that none exists." *Elonis v. United States*, 575 U.S. 723, 734 (2015). The Supreme Court has repeatedly held that "mere omission from a criminal enactment of any mention of criminal intent" should not be read "as dispensing with it." *Id.* (quoting *Morissette v. United States,* 342 U.S. 246, 250 (1952)). Criminal liability is based on the "basic principle that 'wrongdoing must be conscious to be criminal.'" *Morissette,* 342 U.S. at 252. "The 'central thought' is that a defendant must be 'blameworthy in mind' before he can be found guilty, a concept courts have expressed over time

through various terms such as *mens rea,* scienter, malice aforethought, guilty knowledge, and the like." *Elonis*, 575 U.S. at 734 (2015). The indictment may satisfy pleading the requisite intent by describing the defendant's actions. *Howard*, 947 F.3d at 944. However, when an indictment fails to allege the requisite mens rea (either explicitly or through factual allegations), the indictment must be dismissed without prejudice. *United States v. Keith*, 605 F.2d 462, 463–65 (9th Cir. 1979) (ordering dismissal of manslaughter indictment for failing to allege implicit element of gross negligence).

Count one in this indictment fails to state an offense because the allegations in the indictment omit the requisite mens rea, which is an essential element of the offense. *See U.S.A. v. Boylan*, No. CR 20-600-GW, 2022 WL 6338421 (C.D. Cal. Aug. 30, 2022), *adopted,* No. CR 20-600-GW, 2022 WL 6338347 (C.D. Cal. Sept. 1, 2022) (dismissing the 18 U.S.C. § 1115 indictment for failing to allege gross negligence, instead of simple negligence); *see also United States v. Carll*, 105 U.S. 611, 613 (1881) (failure to allege the requisite mens rea, though not expressly required by the statute, renders the indictment insufficient for failing to "charge him with any crime.").

Title 18, section 1115 of the United States Code requires an allegation of gross negligence. *See Boylan*, 2022 WL 6338421. Although the plain language of § 1115 does not include gross negligence, that statute must be construed "in light of the background rules of common law." *Staples v. United States*, 511 U.S. 600, 605 (1994). And those background rules dictate that the definition of "negligence" in a criminal statute – and especially in a homicide statute – is "gross negligence." Indeed, Black's Law Dictionary defines "criminal negligence" as "Gross negligence so extreme that it is punishable as a crime." *Negligence*, Black's Law Dictionary (11th ed. 2019). The commentary to the definition also notes that "legislatures and the courts have often made it clear that criminal liability generally requires more fault than the ordinary negligence which will

do for tort liability." *Id.* Similarly, the Model Penal Code states that when a statute criminalizes conduct performed "negligently," it requires proof of gross negligence. Model Penal Code § 2.02(2)(d)[3]; *see also* Herbert Wechsler, *Codification of Criminal Law in the United States: The Model Penal Code*, 68 Colum. L. Rev. 1425, 1438 (1968) (explaining that under the Model Penal Code, criminal negligence requires a showing of gross negligence, and "[m]uch more than the 'ordinary negligence' of tort law is thus deemed to be involved.").[4] Given this common law background, when Congress uses the term "negligence" to define liability in § 1115, it "presumably knows and adopts the cluster of ideas that were attached" to that "term of art" in the context of American criminal law. *Morissette*, 342 U.S. at 263.

Case law supports that criminal negligence is gross negligence, especially in homicide cases. The Sixth Circuit has not spoken on this issue, but other circuits have repeatedly stated that "negligence" in a homicide statute means "gross negligence." *United States v. Pardee*, 368 F.2d 368, 374 (4th Cir. 1966) (holding that "a charge of manslaughter by negligence is not made out by proof of ordinary simple negligence that would constitute civil liability," and "the amount or

---

[3] Model Penal Code § 2.02(2)(d) defines Negligently as: A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

[4] The exception that proves the rule here is that "negligence" in so-called "regulatory" or "public welfare" statutes can sometimes be read to criminalize simple negligence, but only in "limited circumstances" and only when the statute imposes only "small penalties." *Staples*, 511 U.S. at 606–07 (explaining that in interpreting "public welfare offenses," the Court will dispense with the typical interpretive rules governing criminal statutes' mens rea, but only in "limited circumstances" and usually only when the statutes impose only "small penalties"); *see also United States v. Hanousek,* 176 F.3d 1116, 1121-22 (9th Cir.1999) (Clean Water Act is public welfare legislation that criminalizes simple negligence because its criminal provisions are "clearly designed to protect the public at large from the potentially dire consequences of water pollution").

degree or character of the negligence to be proven in a criminal case is gross negligence." (citation omitted)); *Keith*, 605 F.2d at 463-64 (adopting *Pardee* as law of Ninth Circuit); *Barbeau*, 193 F.2d at 948-49 (addressing a "negligent homicide" statute criminalizing "culpable negligence" and agreeing with the district court that a conviction required gross negligence and that "[c]ulpable negligence is something more than the slight negligence necessary to support a civil action for damages"); *United States v. Brown*, 992 F.3d 665, 670 (8th Cir. 2021) (requiring gross negligence for involuntary manslaughter).

The Supreme Court has repeatedly stated that there is a presumption against imposing any criminal liability – let alone homicide liability – based on simple negligence; as the Supreme Court recently explained, "we have long been reluctant to infer that a negligence standard was intended in criminal statutes." *Elonis*, 575 U.S. at 738; see also *Ruan v. United States*, 597 U.S. 450, 466 (2022). Given the long-understood requirement of criminal negligence to be more than ordinary negligence, the courts' interpretation of homicide statutes requiring a heightened negligence even when no mens rea is included in the statute, and the Supreme Court's repeated reluctance to infer negligence in criminal statutes, § 1115 must be read to require gross negligence and not ordinary tort negligence.

Because Count one failed to plead the appropriate mens rea, that being gross negligence, either explicitly or through the facts, it must be dismissed.

**IV.     Conclusion**

Count one fails to state an offense because the allegations omit an essential element of the offense. Therefore, Mr. Gorishti asks the Court to dismiss count one in the indictment.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Jeffrey B. Lazarus*
JEFFREY B. LAZARUS
Assistant Federal Public Defender
Ohio Bar: 0079525
*/s/ Darin Thompson*
DARIN THOMPSON
Assistant Federal Public Defender
Ohio Bar: 0067093
*s/ Cathi Adinaro Shusky*
CATHI ADINARO SHUSKY
Ohio Bar: 0088731
Office of the Federal Public Defender
1660 West Second Street, Suite 750
Cleveland, OH 44113
(216)522-4856   Fax:(216)522-4321
E-mail: jeffrey_lazarus@fd.org;
         darin_thompson@fd.org
         cathi_shusky@fd.org